THE CHAPEL, D.B.A. THE CHAPEL, AN EVANGELICAL CHURCH, APPELLANT, *v.* CITY OF SOLON ET AL., APPELLEES.

[Cite as The Chapel *v.* Solon (1988), 40 Ohio St. 3d 3.]

(No. 87-1554—Submitted September 20, 1988—Decided November 30, 1988.)

4

*Joseph W. Diemert, Jr. & Associates Co., L.P.A., Joseph W. Diemert, Jr.* and *Sara J. Fagnilli,* for appellant.

*Charles T. Riehl,* director of law, *Walter, Haverfield, Buescher & Chockley* and *Frederick W. Whatley,* for appellees.

DOUGLAS, J. Appellant contends that it has a clear legal right to site approval and a building permit because churches are permissible in the requested area. It contends that appellees have a legal duty to issue both. We disagree.

To entitle a relator to a writ of mandamus, it must be shown " '(1) that he has a clear legal right to the relief prayed for, (2) that respondents are under a clear legal duty to perform the acts, and (3) that relator has no plain and adequate remedy in the ordinary course of the law.' " *State, ex rel. Berger,* v. *McMonagle* (1983), 6 Ohio St. 3d 28, 29, 6 OBR 50, 51, 451 N.E. 2d 225, 226.

A writ of mandamus must not issue when there is a plain and adequate remedy at law. *State, ex rel. Middletown Bd. of Edn.,* v. *Butler Cty.* *Budget Comm.* (1987), 31 Ohio St. 3d 251, 31 OBR 455, 510 N.E. 2d 383. Appellant has a clear remedy at law because the denial of a building permit by an official should be appealed to the court of common pleas under R.C. Chapter 2506. *State, ex rel. Federal Homes Properties, Inc.,* v. *Singer* (1967), 9 Ohio St. 2d 95, 38 O.O. 2d 227, 223 N.E. 2d 824.

The proper procedure to test an official's refusal to issue a building permit is by way of appeal to the court of common pleas after all administrative remedies of appeal, if any, are exhausted. R.C. 2506.01.

Additionally, appellant does not have a clear legal right to a building permit since it failed to follow Solon's procedures for procuring such a permit, which procedures are codified in Solon Building Code Sections 1303.03 and 1305.01 and Chapter 1307.

Appellant disagrees and cites *State, ex rel. Killeen Realty Co.,* v. *East Cleveland* (1959), 169 Ohio St. 375, 8 O.O. 2d 409, 160 N.E. 2d 1, which found that in a proper case, a writ of mandamus may be issued to compel the granting of a building permit denied by the local authorities. However, *Killeen* is factually inapposite to this case. In *Killeen,* a writ of mandamus was issued to compel a city official to *rezone* and issue a building permit for property which was an isolated parcel of land surrounded on three sides by land zoned for less restricted uses and which would be in harmony with the needs and nature of the community. In the case before us, zoning is not an issue. A church is a permitted use in the zoning district in which the property is located. However, absent construction of the church, The Chapel's accessory buildings, which are to be built first, are not allowed uses. In addition, The Chapel did not attempt to resolve problems with soil erosion, drainage and traffic enumerated by

the planning commission. Given a resolution of the problems concerning land use and the sequence of construction, plan approval and a building permit could issue. Based on these distinctions, *Killeen* does not apply here.

Since appellant does not have a clear legal right to site plan approval or a building permit, it follows that appellees do not have a clear legal duty to issue same. Furthermore, appellant has an adequate remedy at law. Therefore, the writ of mandamus will not issue.

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, HOLMES and H. BROWN, JJ., concur.

LOCHER and WRIGHT, JJ., dissent.

WRIGHT, J., dissenting. The majority's opinion omits several facts which are germane to ascertaining the true motives of the city in refusing to approve appellant's site plan. Agents of the appellant met with city officials and explained the plans for a church before purchasing the property at issue. City officials, by letter, encouraged appellant to purchase the property. Appellant then sold its former church property and spent approximately $1,500,000 to purchase the property at issue and to develop the initial site plans. At the present, appellant holds religious services at the Solon High School.

The appellant does not seek to rezone the property, nor does it seek a variance from applicable building code requirements. The building of a church is a permitted use of the U-1-B zoned property purchased by appellant. Furthermore, it is alleged that the proposed complex meets all applicable zoning codes. However, the building

commissioner presented appellant's architect with a list of additional requirements that were, by the terms of the city zoning code, applicable only to areas zoned U-9, Office Park District.

Appellant seeks a writ of mandamus on the grounds that the appellees have arbitrarily refused to approve the site plan for legally insufficient reasons. The majority affirms the court of appeals' refusal to issue the writ on the grounds that appellant failed to exhaust its administrative remedies and that there is, in any case, an adequate remedy at law pursuant to R.C. 2506.01, which provides for an appeal to the court of common pleas. The appellees disapproved appellant's site plan because of concerns about (1) increased traffic, (2) order of construction of the buildings, and (3) soil erosion and water runoff.

Appellant is in a catch-22 with respect to filing an application for a building permit in order to exhaust its administrative remedies. The preliminary site plan was disapproved, yet the appellees and the majority would require the appellant to spend even more money for a "complete set of specifications, and * * * a complete set of plans and working drawings" to accompany its application. (Solon Building Code Section 1305.01.) It is nonsensical to require this when the preliminary step of a site plan has not and will not be approved. All parties concede that this will be a large project and that the construction site has peculiarities such as slope and bedrock which could well affect the construction plans depending upon where the buildings will be sited or situated upon the property. This court has previously held that failure to perform a prerequisite act which is expensive, onerous, and a vain one, will not preclude issuance of a writ of mandamus. *State, ex rel. Killeen Realty Co.*, v. *East Cleveland* (1959), 169 Ohio St. 375, 8 O.O. 2d

409, 160 N.E. 2d 1, paragraph two of the syllabus. Accordingly, I believe that the appellant's failure to formally submit numerous, expensive drawings and to file a fee is not controlling in this case.

It is sensible and appropriate that traffic volume and flow resulting from a project should be analyzed. The appellees estimate that the cost of improving the intersection of SOM Center Road (State Rt. 91) and Cannon Road would cost approximately between $70,000 and $185,000. The appellees also estimate that unless the appellant pays for the construction that is required, it would take five to seven years to obtain assistance of the county and the state to effect the improvements. While the proposed development will involve increased traffic on existing roads, it would only require the upgrading of existing roads. Nevertheless, the city officials would not allow the appellant to develop its property until after the roads have been improved. This court has previously stated:

"From the point of view of the party who considers making an improvement, this study may be important only to the extent that it bears on his own conveniences and economic calculations. However, from the point of view of zoning authorities making a similar study, the needs of the community as a whole must, as always, be paramount, and this court recognized the importance of traffic considerations in the recent case of *State, ex rel. [Associated Land & Investment Corp.], v. Lyndhurst* [(1958), 168 Ohio St. 289, 7 O.O. 2d 1, 154 N.E. 2d 435]. Nonetheless, traffic regulation must remain a byproduct of zoning activities, and the primary product must always be to insure the greatest enjoyment of one's land, taking into account the rights of others and the needs of the commun-

ity. Thus, if the present proposal is otherwise lawful and proper, the public authorities must find some manner of dealing with the traffic hazards of Euclid Avenue other than curtailing the use of the Walworth Tract by the realtors." *Killeen, supra,* at 386, 8 O.O. 2d at 415, 160 N.E. 2d at 8.

Following that reasoning, the appellees may not disapprove of appellant's site plan because of increased traffic on preexisting roads. The appellees are limited to determining accessibility to those roads.

The appellant's proposed plan, as modified by letter dated January 6, 1987, includes a two-hundred-fifty seat chapel in the first stage of construction. It is not disputed that appellant will use the buildings constructed in phase one for religious purposes. That the church will include a gymnasium that is to be lighted and wired so that it can also be used for a worship center is not unusual, undesirable, or illegal. Many church facilities are used for non-religious purposes, such as dances and bingo games. Appellees' argument against the original plan which was to build the auxiliary structures first is specious in light of the fact that a chapel will now be included in the first phase of construction.

Finally, the appellees argue that the concerns with regard to soil erosion and water runoff necessitate denial of appellant's site plan. The planning commission's resolution refers to the Land Use and Treatment Site Plan Review prepared by the Cuyahoga Soil and Water Conservation District. The planning commission's report only quotes the negative part of that review, ignoring the statements that: "The two Water and Sediment Control Basins [proposed by the appellant] are a very good idea. If they are permanent practices then they will help to solve the problems with in-

creased water runoff from the site after it is developed." The review proposes several conservation practices that could be employed and lists sources of standards and specifications for those practices so that the "individual who develops the plan will have a reference to use. It should be noted that these practices may not all fit into the plan that is developed. There may also be a need for conservation practices that have not been mentioned. The last two sources given below contain a large number of other conservation practices that may also fit into this planned development." Clearly, the site plan that was submitted to the Cuyahoga Soil and Water Conservation District is part of a preliminary process that requires input from the city engineer as set forth in the applicable ordinances.

Chapter 1117 of the Codified Ordinances of Solon (Planning and Zoning Code) provides in pertinent part:

"1117.01 PLAN REQUIRED.

"In the event that any owner, developer or builder intends to make changes in the contour of any land proposed to be subdivided, developed *or* changed in use by grading, excavating *or* by the removal or destruction of natural vegetation and its topsoil, trees or other vegetation covering thereon, the same shall only be accomplished after the owner of such land, or his agent, has submitted to the City Engineer for approval a plan for erosion and sedimentation controls, *to be reviewed by the Engineer in accordance with the standards set forth* in the Urban Sediment Pollution Abatement Rules of the Ohio Department of Natural Resources, Division of Soil and Water Districts * * *.

"* * *

"Such plan shall contain adequate measures for the control of erosion and siltation where necessary * * *.

"The Engineer shall review these plans as submitted and shall take necessary steps to insure compliance by the developer with these plans as finally approved during and after construction of all phases of the subdivision." (Emphasis added.)

"1117.02. CITY ENGINEER TO APPROVE.

"The City Engineer, in his consideration of *each preliminary* plan or extension of a previously approved plan, shall condition his approval upon the execution by the developer of erosion and sediment control measures *as required by the Engineer pursuant to Section 1117.01, and to be required by the Engineer after receiving comments and recommendations from the Cuyahoga Soil and Water Conservation District pursuant to Section 1117.03.*" (Emphasis added.)

The appellant correctly argues that it is impossible to prepare the detailed plans required by the building code without first obtaining guidelines to develop such plans. According to Chapter 1117 of the Planning and Zoning Code, the city engineer is required to set forth those erosion and sediment control measures necessary to meet the standards set forth in Section 1117.01. Mandamus will not lie to compel the issuance of a building permit to be applied for in the future. However, at the time the appellant applied for a writ, the city engineer had a duty under Section 1117.01 *et seq.* to promulgate those measures which will provide "adequate" control of erosion and siltation. See *State, ex rel. Federal Homes Properties, Inc.,* v. *Singer* (1967), 9 Ohio St. 2d 95, 38 O.O. 2d 227, 223 N.E. 2d 824.

The planning commission's disapproval of the site plan simply because it prefers that the land not be used as it is zoned constitutes unlawful rezoning without legislative action and is an

abuse of discretion. *Schomaeker* v. *First Natl. Bank* (1981), 66 Ohio St. 2d 304, 309, 20 O.O. 3d 285, 288, 421 N.E. 2d 530, 535; *Hydraulic Press Brick Co.* v. *Council of Independence* (1984), 16 Ohio App. 3d 204, 16 OBR 219, 475 N.E. 2d 144.

The appellant did not name the city engineer in its complaint as a respondent, although it did so name the city of Solon, its mayor and the city planning commission. However, mandamus actions are governed by the Ohio Rules of Civil Procedure. Civ. R. 21 provides in pertinent part:

"* * * Parties may be dropped or added by order of the court * * * of its own initiative at any stage of the action and on such terms as are just. * * *"

Accordingly, I would issue an alternative writ of mandamus to the effect that the city engineer be joined as a party and be required to promulgate those measures necessary to prevent excessive soil erosion from water run-off, keeping in mind that Ohio has adopted a reasonable-use rule with respect to water runoff. "Each possessor is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others. He incurs liability only when his harmful interference with the flow of surface water is unreasonable." *McGlashan* v. *Spade Rockledge Terrace Condo Dev. Corp.* (1980), 62 Ohio St. 2d 55, 60, 16 O.O. 3d 41, 44, 402 N.E. 2d 1196, 1200.

LOCHER, J., concurs in the foregoing dissenting opinion.