THE STATE, EX REL. ELIZA JENNINGS, INC., APPELLEE, *v.*
NOBLE, DIRECTOR, APPELLANT.

[Cite as State, ex rel. Eliza Jennings, Inc., *v.* Noble (1990),
49 Ohio St. 3d 71.]

(No. 89-143—Submitted November 7, 1989—Decided February 21, 1990.)

*Calfee, Halter & Griswold, Mark I. Wallach, Kenneth S. Cline* and *Smith R. Brittingham IV,* for appellee.

*Michael R. Gareau,* law director, and *James M. Dubelko,* for appellant.

*Per Curiam.* The main issue before this court is whether appellee, Eliza Jennings, Inc., for the purpose of receiving permits to "tap in" to North Olmsted's sanitary sewer system, is required to submit a fee calculated solely by reference to North Olmsted Codified Ordinances Section 911.10, or whether the "benefited unit" provisions of Section 911.09 should also apply. For the reasons cited below, we find that, in order to receive such permits for its construction project, appellee must submit both a "per connection" fee, as described in North Olmsted Codified Ordinances Section 911.10, and a "benefited unit" fee as provided in Section 911.09.

As a threshold to our inquiry, we will determine if the court of appeals properly granted the writ of mandamus, or whether there was an adequate remedy at law for the appellee to pursue.

R.C. 2731.05, which governs the issuance of writs of mandamus, provides that "[t]he writ of mandamus must not be issued where there is plain and adequate remedy in the ordinary course of the law." In addressing the issue of when mandamus is an appropriate remedy, this court has held that, "[i]n order for the extraordinary writ of mandamus to issue, a court must find that the relator has a clear legal right to the relief prayed for, that the respondent is under a clear legal duty to perform the requested act, and that relator has no plain and adequate remedy at law. * * *" *Freshour* v. *Radcliff* (1988), 35 Ohio St. 3d 181, 182, 519 N.E. 2d 395, 396, citing *State, ex rel. Westchester Estates, Inc.,* v. *Bacon* (1980), 61 Ohio St. 2d 42, 15 O.O. 3d 53, 399 N.E. 2d 81, paragraph one of the syllabus; accord *State, ex rel. GMS Management Co.,* v. *Callahan* (1989), 45 Ohio St. 3d 51, 54, 543 N.E. 2d 483, 486; *The Chapel* v. *Solon* (1988), 40 Ohio St. 3d 3, 530 N.E. 2d 1321; *State, ex rel. Berger,* v. *McMonagle* (1983), 6 Ohio St. 3d 28, 29, 6 OBR 50, 50-51, 451 N.E. 2d 225, 226; *State, ex rel. Harris,* v. *Rhodes* (1978), 54 Ohio St. 2d 41, 8 O.O. 3d 36, 374

N.E. 2d 641. Furthermore, "[f]or a remedy at law to be adequate, the remedy should be complete in its nature, beneficial and speedy. * * *" *State, ex rel. Liberty Mills, Inc.,* v. *Locker* (1986), 22 Ohio St. 3d 102, 104, 22 OBR 136, 137, 488 N.E. 2d 883, 885-886; *State, ex rel. Merydith Constr. Co.,* v. *Dean* (1916), 95 Ohio St. 108, 123, 116 N.E. 37, 41.

Appellant maintains in his first proposition of law that even if there was a miscalculation of the "tap-in" charges for appellee's connections to the North Olmsted sanitary sewer system, appellee had several plain and adequate remedies at law. We agree. For instance, appellee could have pursued an administrative appeal from the appellant's decision pursuant to R.C. 2506.01.[2] Specifically, appellant's decision, rejecting appellee's application for sanitary sewer connection permits, was a final decision, which determined "rights, duties, privileges, benefits, or legal relationships" within the meaning of R.C. 2506.01, and was appealable to the Court of Common Pleas of Cuyahoga County. See *State, ex rel. Cunagin Constr. Corp.,* v. *Creech* (1969), 20 Ohio St. 2d 128, 49 O.O. 2d 447, 254 N.E. 2d 18 (the denial of a building permit by a city planning commission constituted a final order under R.C. 2506.01 *et seq.,* thereby making

mandamus an improper remedy). Also, appellee could have filed a declaratory judgment action against the city to determine whether the city had breached its contract with the county in calculating "tap-in" charges for Olmsted Township property owners. See *State, ex rel. Dollison,* v. *Reddy* (1978), 55 Ohio St. 2d 59, 60, 9 O.O. 3d 67, 378 N.E. 2d 150, 151 (although the availability of a declaratory judgment action does not bar the issuance of a writ of mandamus, the court may consider the availability of declaratory judgment as one element in exercising its discretion whether the writ should issue).

Appellee suggests that time was crucial to the success of its building project, thereby creating the need for the extraordinary remedy of mandamus. This court has stated "[w]here a constitutional process of appeal has been legislatively provided, the sole fact that pursuing such process would encompass more delay and inconvenience than seeking a writ of mandamus is insufficient to prevent the process from constituting a plain and adequate remedy in the ordinary course of the law. (*State, ex rel. Kronenberger-Fodor Co.,* v. *Parma,* 34 Ohio St. 2d 222 [63 O.O. 2d 362], syllabus approved and followed.)" *State, ex rel. Willis,* v. *Sheboy* (1983), 6 Ohio St. 3d 167, 6

---

[2] R.C. 2506.01 provides:

"Every final order, adjudication, or decision of any officer, tribunal, authority, board, bureau, commission, department, or other division of any political subdivision of the state may be reviewed by the court of common pleas of the county in which the principal office of the political subdivision is located as provided in Chapter 2505. of the Revised Code, except as modified by this chapter.

"The appeal provided in this chapter is in addition to any other remedy of appeal provided by law.

"A 'final order, adjudication, or decision' means an order, adjudication, or decision that determines rights, duties, privileges, benefits, or legal relationships of a person, but does not include any order, adjudication, or decision from which an appeal is granted by rule, ordinance, or statute to a higher administrative authority if a right to a hearing on such appeal is provided, or any order, adjudication, or decision that is issued preliminary to or as a result of a criminal proceeding."

OBR 225, 451 N.E. 2d 1200, paragraph one of the syllabus. In the instant case, appellee failed to sufficiently specify why any delay involved in pursuing these alternative remedies is an overriding factor justifying relief in mandamus.

Thus, we hold that appellee had a plain and adequate remedy in the ordinary course of law.

Next, we address appellee's motion to. dismiss this case as moot. In determining whether a case is moot, " '[t]he duty of this court, as of every judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it. It necessarily follows that when, pending an appeal from the judgment of a lower court, and without any fault of the defendant, an event occurs which renders it impossible for this court, if it should decide the case in favor of the plaintiff, to grant him any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal. * * *' " *Miner* v. *Witt* (1910), 82 Ohio St. 237, 238-239, 92 N.E. 21, 22, quoting *Mills* v. *Green* (1895), 159 U.S. 651, 653.

Appellee argues that this case should be dismissed as moot, since appellee was able to obtain the desired connections into the North Olmsted sanitary sewer system pursuant to the writ issued by the court of appeals. We believe appellee ignores the main issue still in controversy, which is the proper fee to be paid by Olmsted Township for the "tap-in" residents permits to the North Olmsted sanitary sewer system. Therefore, we deny appellee's motion to dismiss.

The key issue left to be resolved is whether the appellee was required to pay a "benefited unit" fee in addition to the "per connection" fee in order to receive the "tap-in" permits for sewer connections.

Appellant asserts that appellee had incorrectly calculated the fee for the permits and that the fee should be based on the number of "benefited units" within the project, per North Olmsted Codified Ordinances Section 911.09,[3] rather than strictly upon the

---

[3] North Olmsted Codified Ordinances Section 911.09 provides in pertinent part:

"(a) *Tap-In Charge Required.* From and after January 1, 1972, no person, corporation, public agency, partnership or association whatsoever shall connect, or cause to be connected, any building or other structure in the City either directly or indirectly with the municipal sanitary sewerage system for the purpose of discharging sanitary sewage or industrial waste therefrom without first securing from the Service Director a permit for such purpose in a form prescribed by the Director and without first paying a tap-in charge determined in accordance with the provision of subsection (b) hereof.

"(b) *Schedule of Tap-In Charges Based on Benefited Units.* The Service Director shall not issue a permit for the purpose described in subsection (a) hereof until the applicant therefor has paid a tap-in charge to be determined in accordance with the following:

| If Permit Obtained From: | Benefited Unit of One |
|---|---|
| January 1, 1975 to December 31, 1977 | $325.00 |
| January 1, 1978 to December 31, 1979 | 420.00 |
| January 1, 1980 to December 31, 1984 | 483.00 |
| January 1, 1985 and thereafter | 555.00 |

"Such incremental charges are designed to offset in part the interest costs incurred by the City in issuing notes and bonds and the loan from the Ohio Water Development Authority to pay the cost of

number of actual sewer connections running to the buildings. Under the appellant's calculations, the total fee for the required permits, taking into account the number of "benefited units" in the buildings, was $176,770.44, as opposed to the $62,832 tendered by the appellee.

The June 24, 1983 agreement between the city of North Olmsted and Cuyahoga County provides in Section 10 that "[t]he Board of County Commissioners shall incorporate all provisions of the North Olmsted Sewer Use Ordinance for the North Olmsted Service Area in Olmsted Township after adoption by the City of North Olmsted in accordance with requirements of the Environmental Protection Agency and proposed in the Dalton-Dalton-Newport report entitled, 'City of North Olmsted Sewer Use Ordinance.' The county shall have the right to review the proposed sewer use ordinance prior to its adoption." The language which specifies that the commissioners shall incorporate "all provisions of the North Olmsted Sewer Use Ordinance Service Area in Olmsted Township" means that all the provisions of North Olmsted's Codified Ordinances Chapter 911, the city's "Sewer Use Ordinance," not just Section 911.10, should be applied to Olmsted Township residents seeking sewer "tap-in" permits. Therefore, appellee is subject to both the "per connection" charges in Codified Ordinances Section 911.10 and the "benefited unit" charges found in Section 911.09. If the city had intended that Olmsted Township residents would only be bound by Section 911.10, then the language in the city's agreement with the county incorporating the entire "Sewer Use Ordinance" would have been meaningless. We have to assume the city and the county meant what they said when they made all the provisions of the "Sewer Use Ordinance," North Olmsted Codified Ordinances Chapter 911, applicable to the Olmsted Township residents. Consequently, we find that, for the "tap-in" permits for its construction project the appellee was required to submit the amount set forth in North Olmsted Codified Ordinances Section 911.09 ($555 multiplied by the total number of "benefited units" in the entire project) *plus* the amount set forth in Section 911.10 ($924 per connection).[4]

Accordingly, for the foregoing reasons, we reverse the judgment of the court of appeals and deny appellee's motion to dismiss.

*Judgment reversed.*

MOYER, C.J., SWEENEY, HOLMES and H. BROWN, JJ., concur.

DOUGLAS, J., concurs in judgment only.

WRIGHT and RESNICK, JJ., dissent.

---

constructing improvements and extensions to the sewerage system which were not recovered by special assessments."

Section 911.09(b) calculates the number of "benefited units" for single-family residence apartments as follows:

"Efficiency and one-bedroom
    Number of apartment units x .5

"Two bedroom
    Number of apartment units x .75

"Three bedroom
    Number of apartment units x 1.0"

[4] Our review of the record indicates that appellant's calculation of the fee required in this case is flawed. In determining the "benefited unit" fee, appellant multiplied the total number of said units by $924 instead of $555. The dollar amount of $924 is only relevant in calculating the "per connection" fee required under Section 911.10.

WRIGHT, J., dissenting. I respectfully dissent. Under the peculiar facts of this case I question whether appellee had an adequate remedy at law. More important, appellant granted the "tap-in" permits in accordance with the writ granted by the court of appeals without applying for or being granted a stay. This appeal is clearly moot and this cause should be dismissed out of hand.

RESNICK, J., concurs in the foregoing dissenting opinion.