DECISION AND JOURNAL ENTRY
Appellant, Carl Reed, as Administrator of the Estate of Sandra Frank, deceased, ("Mr. Reed") appeals the verdict of the Summit County Court of Common Pleas. We reverse.
 I.
As Edgar Frank, appellee, a resident of Akron, Ohio, was traveling with his wife Sandra Frank through Jasper County, Mississippi on December 2, 1993, an accident occurred in which Sandra Frank was killed. Sandra Frank died due to injuries sustained in the accident. On July 7, 1995, Mr. Reed, as Administrator of Sandra Frank's Estate, filed a complaint against Mr. Frank seeking damages for her death.
In furtherance of discovery, Mr. Reed conducted a deposition of Mr. Frank on October 10, 1997. Mr. Frank failed to bring the items specified in the notice of deposition duces tecum to the deposition. Mr. Reed filed a motion to compel discovery and motion for sanctions on December 24, 1997. Mr. Frank responded in opposition. On January 16, 1998, the trial court denied Mr. Reed's motion but further stated that "[t]he deposition of Defendant Frank may be continued only if Plaintiff clarifies to the Court what additional information he needs from Defendant and provided that prior consent of the Court is obtained". Mr. Reed filed a motion seeking the trial court's prior consent to the continued deposition of Mr. Frank on January 30, 1998, but the trial court denied his motion on February 11, 1998. A jury trial was held, beginning on November 2, 1998. On November 16, 1998, the jury returned a unanimous verdict in favor of Mr. Frank, which was journalized on November 17, 1998. This appeal followed.
 II.
Mr. Reed asserts four assignments of error. As our determination of Mr. Reed's first assignment of error renders the remaining assignments of error moot, we will address it first and consolidate our discussion of his second, third, and fourth assignments of error.
A.
First Assignment of Error
 THE TRIAL COURT ERRED WHEN IT DENIED PLAINTIFF'S MOTION TO COMPEL DISCOVERY.
 Mr. Reed avers that the trial court abused its discretion by denying his motion to compel discovery and in failing to order Mr. Frank to complete the deposition. Moreover, Mr. Reed asserts that, due to the trial court's error, he was unable to obtain information concerning Mr. Frank's medical history, and hence, was unable to put forth a strong claim at trial. We agree.
"[A]bsent an abuse of discretion, an appellate court must affirm a trial court's disposition of discovery issues." State exrel. The V. Cos. v. Marshall (1998), 81 Ohio St.3d 467, 469. Furthermore, "[p]ursuant to Civ.R. 61, `[a] final judgment may not be disturbed due to the exclusion of evidence unless a substantial right of a party is affected.'" Van Deusen v. Baldwin (1994),99 Ohio App.3d 416, 420, quoting State ex rel. Avellone v. Lake Cty.Bd. of Commrs. (1989), 45 Ohio St.3d 58, 62. "Thus, `[a]n appellate court will reverse the decision of a trial court that extinguishes a party's right to discovery if the trial court's decision is improvident and affects the discovering party's substantial rights.'" Mauzy v. Kelly Services, Inc. (1996),75 Ohio St.3d 578, 592, quoting Rossman v. Rossman (1975),47 Ohio App.2d 103, 110.
Civ.R. 26(B)(1) provides that:
 In general. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.
(Emphasis original.) "Privilege must rest upon some specific constitutional or statutory provision." State ex rel.Grandview Hosp. Med. Ctr. v. Gorman (1990), 51 Ohio St.3d 94,95. As this court has previously noted, "[t]he intent of the discovery rules is to permit the parties great leeway in gathering information for trial[.]" MaCarthy v. Dunfee
(1984), 19 Ohio App.3d 68, 68.
In the instant matter, the deposition of Mr. Frank was replete with instances where he was unable to find or remember relevant material, made contradictory statements, or appeared to be intentionally deceptive:
* * *
 Q. Did you work for Westinghouse during the entire time that you lived in Pittsburgh?
 A. When I was hired in Pittsburgh I lived in New York.
 Q. No, I said while you were living in Pittsburgh.
A. How long?
* * *
 Q. And did you go to Sweden with the students from the boarding school in Brandenburg?
A. The reason I went — —
 Q. I asked you did you go to Sweden with the students that you had attended the boarding school in Brandenburg with?
A. I told you — —
 Q. Just answer my question, sir. Did you go to Sweden — —
 A. See, you sound like a Nazi interrogating me. Watch the way you talk to me, sir.
* * *
Q. Did you get a diploma of any kind?
 A. You just got a letter to the high school, that I could go to the high school. And I'm not going to waste time to explain to you the way Germany handled high school and the basics.
Q. Sir, if I'm not mistaken you're in Sweden now.
 A. I'm in Sweden. I wish I was in Sweden. They knew how to treat you.
* * *
 Q. Sir, I'm handing you a document that has been filed with the court and it's called amended notice of deposition duces tecum filed with the court on September 29th, 1997. Have you ever seen this document before?
A. I've seen it but I don't believe it.
Q. Did you see the list — —
A. That's right.
Q. — that's attached to this document?
A. Yes. I hardly see you. I'm that upset.
* * *
 Q. Sir, I asked you to bring all prescription receipts and records for medication taken by you during the year of 1993. Did you bring them with you?
A. No.
* * *
 Q. That's what I'm saying. Is he the first one? Is he the one who prescribed Phenobarbital again for you?
A. Yes.
 Q. And that's the doctor whose name I'm asking you for.
 A. He is in Pittsburgh and he doesn't want to be bothered by anybody.
 Q. I don't question that he doesn't want to be bothered. All I'm asking you for is his name.
 A. He is a friend of mine and I stick with my friends.
* * *
 Q. Move to strike that. Sir, where was this doctor?
A. Where would you want me to strike you?
* * *
Mr. Frank evaded questions and refused to comply with legitimate discovery requests that were made pursuant to Civ.R. 30(B) in the amended notice of deposition duces tecum
filed in the trial court on September 29, 1997. He gave evasive answers to questions regarding a physician who had treated him in Pittsburgh and would not provide records concerning his medical history. Mr. Frank also exited the deposition before Mr. Reed's attorney had completed deposing him and before the deposition was scheduled to conclude. Mr. Reed had a valid need for information as to Mr. Frank's medical history. Apparently, Mr. Frank had contracted encephalitis, which had caused neurological damage, and a doctor in Pittsburgh had prescribed Phenobarbital to treat his condition. From what can be gleaned from Mr. Frank's incomplete deposition, a remaining effect of the encephalitis may have been seizure activity, which may have been controlled by Phenobarbital. Mr. Reed sought the name of the Pittsburgh doctor who prescribed Phenobarbital and any records on this matter in the notice of deposition duces tecum, apparently to determine the possible cause of the accident, which took Sandra Frank's life. Mr. Frank's answers to questions seeking this information were not forthright, and in fact, were not answers at all. This information was relevant not only in regard to Mr. Reed's case but also to Mr. Frank's asserted defense that "[the] incident was an unavoidable accident and was caused by a medical condition of the Defendant of which he had no knowledge prior to the accident." See WeldonTool Co. v. Kelley (1947), 81 Ohio App. 427, 427 ("Where a driver of an automobile is suddenly stricken by illness, which he has no reason to anticipate, whereby he is rendered unconscious or `blacks out,' and as a proximate result loses control of the automobile and injury is thereby caused to another, such circumstances do not establish actionable negligence against the driver"). Hence, Mr. Frank's inability to remember the accident and the accident itself may have been related to Mr. Frank's medical history.
We conclude that, in such an instance, it was error for the trial court not to compel discovery and not to allow Mr. Reed to further depose Mr. Frank absent a showing of privilege. Mr. Frank's recollection of the accident, as the only survivor of a one car accident, and his medical history if, as Mr. Reed alleges, he was the operator of the vehicle, were crucial to Mr. Reed's case. Moreover, evidence that Mr. Frank had knowledge of the medical condition that may have caused the accident may have been discovered given further deposition of Mr. Frank and disclosure of the requested documents. Furthermore, due to the intimate causal connection that such evidence may have shown between Mr. Frank's medical problems and the accident, we cannot conclude that Mr. Reed was not substantially prejudiced in the preparation of his case. Therefore, Mr. Reed's first assignment of error is sustained.
B.
Second Assignment of Error
 THE TRIAL COURT ERRED WHEN IT EXCLUDED THE MEDICAL RECORDS AND REPORTS OF DEFENDANT'S TREATING PHYSICIAN, DR. JAMES KLEMAN, FROM EVIDENCE AT TRIAL.
Third Assignment of Error
 THE TRIAL COURT ERRED WHEN IT IMPROPERLY LIMITED PLAINTIFF'S CROSS-EXAMINATION OF DEFENDANT AT TRIAL.
Fourth Assignment of Error
 THE TRIAL COURT ERRED WHEN IT DENIED PLAINTIFF'S MOTIONS FOR JUDGMENT N.O.V. AND/OR NEW TRIAL.
 Mr. Reed avers that the trial court erred in excluding evidence at trial, improperly limited cross-examination of Mr. Frank at trial, and erred in denying Mr. Reed's motions for judgment notwithstanding the verdict and a new trial. Due to our resolution of Mr. Reed's first assignment of error, the cause must be remanded for further discovery proceedings and a new trial regardless of our resolution of these issues. Moreover, the information obtained by Mr. Reed in further discovery proceedings may bear on the resolution of these issues.
 In determining whether a case is moot, "`[t]he duty of this court, as of every judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it. It necessarily follows that when, pending an appeal from the judgment of a lower court, and without any fault of the defendant, an event occurs which renders it impossible for this court, if it should decide the case in favor of the [appellant], to grant him any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal. * * *'" Miner v. Witt
(1910), 82 Ohio St. 237, 238-239, 92 N.E. 21, 22, quoting Mills v. Green (1895), 159 U.S. 651, 653.
 (Alterations original.) State ex rel. Eliza Jennings, Inc. v. Noble (1990), 49 Ohio St.3d 71, 74. Therefore, we conclude that Mr. Reed's final three assignments of error are moot and we decline to address them. See App.R. 12(A)(1)(c).
 III.
Mr. Reed's first assignment of error is sustained. His remaining assignments of error are overruled as moot. The judgment of the Summit County Court of Common Pleas is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to both parties equally.
WILLIAM G. BATCHELDER FOR THE COURT SLABY, J., CONCURS.