DECISION AND JUDGMENT ENTRY
{¶ 1} Appellants, Bradley Crosby, Rose Crosby, Monty Cummings, Cathy Cummings, and Jeremiah Rayburn, appeal the trial court's decision entering summary judgment in favor of Pickaway County General Health District (the health district), Pickaway County, and the three Pickaway County Commissioners, Glenn Reeser, Jay Wippel, and Ula Jean Metzler *Page 2 
(collectively referred to as the county defendants) in this mandamus action. Appellants argue that the trial court improperly determined that they had an adequate remedy in the ordinary course of the law by appealing the health district's decision denying their permits. We disagree. While appellants' mandamus action seeks to compel appellees to commence appropriation proceedings, if they appeal the permit denials and are successful, then their appropriation action would appear to be moot. Thus, appellants first must exhaust their administrative remedies before seeking the extraordinary remedy of mandamus.
 {¶ 2} Appellants further argue that the trial court incorrectly concluded that the county defendants are not proper parties to the mandamus action. Even if the trial court's reasoning was erroneous, we may nevertheless uphold its judgment on the alternate basis that appellants failed to show that they lacked an adequate remedy at law. Accordingly, we overrule appellants' two assignments of error and affirm the trial court's judgment.
 I. FACTS {¶ 3} Appellants own two adjoining properties located on Hoover Road in Pickaway County, known as Lots 4 and 5. They purchased the *Page 3 
property with the intent of building a single-family home on their respective lots and selling the homes for a profit. The predecessor-in-title filed a "Sewage System Applicant/Permit" application with the health district that requested approval to install a sewage system on Lots 4 and 5. The health district evaluated the application and listed the requirements for the proposed sewage systems. Appellants then began building the homes on Lots 4 and 5.
 {¶ 4} After appellants finished building the homes, but before installing the septic tanks and leach beds, the health district mailed appellants a letter, which informed them that it had suspended the approval of the sewage system permits. The letter states:
 "To help prevent further problems with surface water affecting sewage systems, flooding, etc., the health department is addressing the following. Lots 4 and 5 on the northern section must have a drainage plan, which will drain the surface and subsurface water away from the leaching areas. The septic systems for these two lots shall not be installed and approved until corrective action has taken place with regards to surface water. By rule, installation of a leach field will not be allowed due to the smearing of the trench walls, which will seal off potential treatment by the soil."
 {¶ 5} Appellants then submitted a drainage plan, but the health district determined that it was not adequate to alleviate the concerns. In a letter to appellants, the health district explained: *Page 4 
 "I know you are expecting information on approval of the installation for the septic system for Lots 4 and 5 on Hoover Rd.[;] however we cannot approve the submitted plans for the septic systems and drainage issues at this time.
 The plans submitted will still affect the neighbors. After seeing the results of last week's rain, additional water draining to the road ditch is not going to help. It will likely create a larger problem for your lots and other lots.
 It is necessary to find out how to drain the road ditch or develop a way to retain or divert the water away from the properties, which are continually flooding from surface water.
 This may not be something that one lot can solve on it's [sic] own. It may take working toward a drainage solution with all the lots together.
 Under current conditions and the current proposed outlet for the plan submitted some further corrective measures or plans will be needed before a septic system can be installed."
Appellants did not submit further drainage plan proposals.
 {¶ 6} Appellant Monty Cummings subsequently sought permission from the board of health to install a septic system on his lot, Lot 4. The board of health issued a formal resolution denying his request. The resolution states:
 "On March 19, 2004, the owners/permit applicants of lots 4 and 5 and lot of the northern section of the Hoover Road Development were notified that the septic systems could not be installed until a plan was submitted and approved and the work completed to drain the area of surface water. There have been some things happening toward this end[;] however there is nothing in plan form or any agreement to complete the work to our knowledge.
 Severe flooding occurs during heavy rains which takes several hours to drain which has backed up other septic systems in the development in past rain events. *Page 5 
 The Environmental Health Staff can understand the frustration of owning the home and not being able to live in it. However, the problems that may occur once they install the system without a drainage plan and corrective measures to drain the area will be detrimental to the property owner and the surrounding properties.
 This office is continuing to advise that the owners of lots 2, 4 and 5 work toward a proper drainage plan and complete the corrective measures for the surface water problem before septic systems can be installed. The Pickaway County Prosecutor, Gene Long, has advised us to continue with this stance.
 The Pickaway County General Health District Board of Health hereby * * * denies the request to install the septic system and occupy the home on Lot 4 Hoover Road, Ashville, Ohio 43103, Harrison Township."
 {¶ 7} None of the appellants took further action to challenge the administrative denial of the permits. Thus, they still have not obtained the proper permits, and their homes remain vacant.
 {¶ 8} On July 7, 2004, appellants filed a complaint in federal district court against the same appellees. Their complaint alleged two claims under 42 U.S.C. 1983 and sought monetary damages for various lost profits and other expenses. In May of 2006, the district court entered summary judgment in favor of appellees.
 {¶ 9} On July 20, 2005, appellants filed a complaint for a writ of mandamus in the Pickaway County Common Pleas Court against appellees. They requested the court to issue "an alternative Writ of Mandamus *Page 6 
compelling [appellees] to institute condemnation proceedings." They alleged that the revocation of the sewage system permits constitutes a taking.
 {¶ 10} The appellees subsequently filed separate summary judgment motions. On June 27, 2006, the trial court entered summary judgment in favor of the county defendants. The court determined that the county defendants were not proper defendants. The court agreed with the federal district court's analysis: "The entity responsible for suspending approval of [appellants'] applications * * * was neither [the county nor the commissioners]. Only Defendant Health District * * * is authorized to approve or disapprove [appellants'] applications. Thus, neither Defendant Pickaway County nor Defendant Commissioners is liable for the harm [appellants] allege they have suffered. There is no causal link between those defendants and the suspension of approval of [appellants'] applications."
 {¶ 11} On October 5, 2006, the trial court entered summary judgment in favor of the health district. The court concluded that before seeking a writ of mandamus, appellants first must exhaust their administrative remedies *Page 7 
 II. ASSIGNMENTS OF ERROR {¶ 12} I. "THE TRIAL COURT COMMITTED ERROR IN GRANTING SUMMARY JUDGMENT TO DEFENDANT-APPELLEE PICKAWAY COUNTY GENERAL HEALTH DISTRICT.
 {¶ 13} II. "THE TRIAL COURT COMMITTED ERROR IN GRANTING SUMMARY JUDGMENT TO DEFENDANTS-APPELLEES PICKAWAY COUNTY, GLENN REESER, JAY WIPPEL AND ULA JEAN METZLER."
 III. LEGAL ANALYSIS {¶ 14} Because appellants' two assignments of error both challenge the trial court's summary judgment decisions, we consider them together.
 {¶ 15} In their first assignment of error, appellants assert that the trial court improperly entered summary judgment in the health district's favor. Specifically, they contend that the trial court improperly concluded that they could not seek a writ of mandamus because they failed to exhaust their administrative remedies. They argue that the relief they sought under the writ was to obtain an order requiring the commencement of appropriation proceedings and that an administrative appeal would not provide an adequate remedy. *Page 8 
 {¶ 16} In their second assignment of error, appellants argue that the trial court erred by entering summary judgment in favor of the county defendants. Appellants contend that the trial court wrongly determined that they were not proper parties to the mandamus action.
 A SUMMARY JUDGMENT STANDARD {¶ 17} When reviewing a trial court's decision regarding a summary judgment motion, an appellate court conducts a de novo review. See, e.g., Doe v. Shaffer (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243;Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105, 671 N .E.2d 241. Accordingly, an appellate court must independently review the record to determine if summary judgment was appropriate and need not defer to the trial court's decision. See Brown v. Scioto Bd. ofCommrs. (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153; Morehead v.Conley (1991), 75 Ohio App.3d 409, 411-12, 599 N.E.2d 786. In determining whether a trial court properly granted a summary judgment motion, an appellate court must review the standard for granting a summary judgment motion as set forth in Civ.R. 56, as well as the applicable law.
 {¶ 18} A trial court may grant a summary judgment motion if the moving party demonstrates that (1) no genuine issues of material fact exist, *Page 9 
(2) it is entitled to judgment as a matter of law, and (3) reasonable minds can come to only one conclusion and that conclusion is adverse to the opposing party. See Civ.R. 56(C); Zivich v. Mentor Soccer Club,Inc. (1998), 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201; Mootispaw v.Eckstein (1996), 76 Ohio St.3d 383, 385, 667 N.E.2d 1197; Harless v.Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46. The party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying portions of the record demonstrating the absence of a genuine issue of material fact as to the essential elements of the nonmoving party's claims.Dresher v. Burt (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. The movant must point to some evidence in the record of the type listed in Civ.R. 56(C) in support of his or her motion. Id. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. Vahila v. Hall (1997), 77 Ohio St.3d 421, 429,674 N.E.2d 1164. Moreover, when ruling on a motion for summary judgment, a court must construe the record and all inferences in the opposing party's favor. See Doe v. First United Methodist Church (1994),68 Ohio St.3d 531, 535, 629 N.E.2d 402. *Page 10 
 B WRIT OF MANDAMUS {¶ 19} "A writ of mandamus is an extraordinary remedy. Mandamus is a writ that commands the `performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station.'"State ex rel. Duncan v. Mentor, 105 Ohio App.3d 372, 2005-Ohio-2163,826 N.E.2d 832, at ¶ 11. "Mandamus is the appropriate action to compel public authorities to commence appropriation cases when an involuntary taking of private property is alleged." State ex rel. Shelly Materials,Inc. v. Clark Cty. Bd. of Commrs., ___ Ohio St.3d ___, 2007-Ohio-5022, ___ N.E.2d ___, at ¶ 15, citing State ex rel. Preschool Dev., Ltd. v.Springboro, 99 Ohio St.3d 347, 2003-Ohio-3999, 792 N.E.2d 721, at ¶ 12. To be entitled to a writ of mandamus in an appropriation proceeding, a relator must establish (1) a clear legal right to compel the commissioners to begin appropriation, (2) the commissioners' corresponding clear legal duty to institute such action, and (3) the lack of an adequate remedy in the ordinary course of law. See ShellyMaterials, at ¶ 15, citing State ex rel. Duncan v. Mentor CityCouncil, 105 Ohio St.3d 372, 2005-Ohio-2163, 826 N.E.2d 832, ¶ 10.
 {¶ 20} An appeal, including an administrative appeal, is considered an adequate remedy that precludes mandamus. State ex rel.Kronenberger- *Page 11 Fodor Co. v. Parma (1973), 34 Ohio St.2d 222, 297 N.E.2d 525, syllabus. Thus, the failure to pursue an adequate administrative remedy bars mandamus relief. See State ex rel. Buckley v. Indus. Comm.,100 Ohio St.3d 68, 796 N.E.2d 522, at ¶ 13, citing State ex rel. Reeves v. Indus.Comm. (1990), 53 Ohio St.3d 212, 559 N.E.2d 1311. "`[It is] the long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'" Jones v. Chagrin Falls
(1997), 77 Ohio St.3d 456, 462, 674 N.E.2d 1388, quoting Myers v.Bethlehem Shipbuilding Corp. (1938), 303 U.S. 41, 50-51, 58 S.Ct. 459,82 L.Ed. 638 (footnote omitted); see, also, Duffield v. Barberton, Summit App. No. 22342, 2005-Ohio-1817, at ¶ 12 ("The exhaustion of administrative remedies doctrine is a well-established principle of Ohio law. The doctrine requires that a party exhaust available administrative remedies prior to seeking court action in an administrative matter.").
 {¶ 21} Thus, a court will not issue a writ of mandamus if a relator fails to exhaust its available administrative remedies. See, e.g.,State ex rel. Leyendecker v. Duro Test Corp. (1999), 87 Ohio St.3d 237,237-238, 719 N.E.2d 528. The doctrine of exhaustion of administrative remedies "applies where a claim is cognizable in the first instance by an administrative agency *Page 12 
alone; judicial interference is withheld until the administrative process has run its course." United States v. Western Pacific R.R.Co. (1956), 352 U.S. 59, 63, 77 S.Ct. 161, 1 L.Ed.2d 126; see, also, Basic Distrib. Corp. v. Ohio Dept. of Taxation (2002),94 Ohio St.3d 287, 290, 762 N.E.2d 979 (stating that "[t]he purpose of the doctrine of exhaustion of administrative remedies is to prevent premature interference with the administrative processes"). In summarizing the general policies underlying the doctrine of exhaustion of administrative remedies, the Supreme Court of Ohio stated:
 "`Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.' Weinberger v. Salfi (1975), 422 U.S. 749, 765, 95 S.Ct. 2457, 45 L.Ed.2d 522. The purpose of the doctrine `* * * is to permit an administrative agency to apply its special expertise * * * and in developing a factual record without premature judicial intervention.' Southern Ohio Coal Co. v. Donovan (C.A.6, 1985), 774 F.2d 693, 702. The judicial deference afforded administrative agencies is to "* * * `prepare the way, if the litigation should take its ultimate course, for a more informed and precise determination by the Court * * *.' Ricci v. Chicago Mercantile Exchange (1973), 409 U.S. 289, 306, 93 S.Ct. 573, 34 L.Ed.2d 525."
Nemazee v. Mt. Sinai Medical Ctr. (1990), 56 Ohio St.3d 109, 111-112,564 N.E.2d 477. *Page 13 
 {¶ 22} The health district argues that appellants had an adequate remedy in the ordinary course of law by appealing to the trial court after exhausting their administrative appeals. The health district citesThe Chapel v. Solon (1988), 40 Ohio St.3d 3, 530 N.E.2d 1321, to support its position. In The Chapel, the landowner filed a complaint for a writ of mandamus seeking to compel the city to issue a building permit. The Supreme Court of Ohio stated that "[a] writ of mandamus must not issue when there is a plain and adequate remedy at law." Id. at 4. The court held: "The proper procedure to test an official's refusal to issue a building permit is by way of appeal to the court of common pleas after all administrative remedies of appeal, if any, are exhausted." Id. at syllabus.
 {¶ 23} The syllabus language of The Chapel supports the health district's argument. Appellants could have tested the refusal to issue the permits by way of appeal to the common pleas court after exhausting administrative remedies. However, the facts of The Chapel are distinguishable from the case at bar. In The Chapel, the landowner sought to compel the officials to issue the permit. By contrast, in the case at bar, appellants are not seeking to compel the health district to issue the permits, but are seeking to compel it to begin appropriation proceedings. Nevertheless, we find that the nature of appellants' mandamus action *Page 14 
necessarily challenges the permit denials and, thus, that they must exhaust their administrative remedies before seeking the extraordinary remedy of mandamus. If their administrative appeals succeed, then any takings claim would appear to be moot.
 {¶ 24} Appellants claim that the administrative appeal procedures would not be adequate to compensate them for the involuntary taking of their property. While appellants' argument appears facially valid, their argument presupposes that an involuntary taking occurred, something that the administrative appeal process would ultimately resolve. If their appeal were successful, then the permits would issue and they would seemingly lack a takings claim. Thus, we agree with the trial court and the health district that appellants have an adequate remedy in the ordinary course of the law.
 {¶ 25} Appellants cite various cases involving mandamus actions in which the Supreme Court of Ohio did not require the relator to exhaust administrative remedies. However, none of those cases required the court to squarely address the question of whether a relator must exhaust administrative remedies following the denial of a permit before seeking a writ of mandamus compelling an appropriation proceeding. *Page 15 
 {¶ 26} For example, in State ex rel. Duncan v. Mentor CityCouncil, supra, Duncan filed a complaint for a writ of mandamus to compel the city council and the planning commission to begin appropriation proceedings to determine the amount by which the value of his property was diminished as a result of the city's enforcement of its ordinances. The planning commission denied his application to build a residence on the property. The court of appeals denied the writ, determining that Duncan's mandamus claim was not ripe because the planning commission's denial of his application did not constitute a final determination concerning the application of regulations to the property. The court of appeals concluded that Duncan should litigate the question of the interpretation and application of the subdivision declaration in a declaratory judgment filed in the common pleas court. The Supreme Court of Ohio disagreed. The court referred to the United States Supreme Court's decision in Williamson Cty. Regional PlanningComm. v. Hamilton Bank of Johnson City (1985), 473 U.S. 172, 186,105 S.Ct. 3108, 87 L.Ed.2d 126 that "`a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue.'" The court also cited its decision in Karches v. Cincinnati (1988), *Page 16 38 Ohio St.3d 12, 526 N.E.2d 1350, paragraph two of the syllabus, that "`[a] prerequisite to a determination that an actual controversy exists in a declaratory judgment action is a final decision concerning the application of the zoning regulation to the specific property in question.'" The court stated that the planning commission had reached a final decision and also distinguished Williamson and Karches by noting that neither involved a mandamus action. The court thus reversed the appellate court's decision.
 {¶ 27} Duncan is distinguishable from the case at bar. Duncan did not address whether the administrative appeal process provided an adequate remedy at law. Instead, the court simply decided that mandamus was appropriate under the facts.
 {¶ 28} More recently, in Shelly Materials, supra, the court considered a similar mandamus action. However, in Shelly, the landowner had administratively appealed the permit denial. The landowner argued that the county zoning appeals board's denial of a conditional-use permit constituted a taking. The Supreme Court of Ohio held that the denial of the permit did not constitute a compensable taking. Again, however, the case did not require the court to consider whether a landowner must exhaust his administrative appeals before filing a mandamus action to compel appropriation proceedings. *Page 17 
 {¶ 29} The court in State ex rel. Hilltop Basic Resources v.Cincinnati, 166 Ohio App.3d 171, 2005-Ohio-6817, 849 N.E.2d 1064, came closest to addressing the exact question presented in the case at bar. In that case, the relators filed a writ of mandamus alleging that the city's refusal to allow them access to a public road constituted a taking. They requested the court to order the city to bring an eminent-domain action to value the interests taken. The city moved to dismiss, arguing that relators failed to state a claim upon which relief could be granted. The city argued that relators failed to exhaust their administrative remedies, which precluded their mandamus action. The city argued that relators could have administratively appealed the city's decision denying the permit. The appellate court disagreed with the city. The court noted that the municipal code did not provide an appellate procedure under these facts and that R.C. 2506.01 did not apply, because the permit denial was not an administrative decision rendered in a quasi-judicial proceeding. The court explained: "If the municipal code provided for the city engineer to approve or deny permits in a quasi-judicial setting — by hearing witnesses and producing a transcript, with other hallmarks of a judicial setting, then appeal to the court of common pleas would be proper. But the code does not provide that type of due process for permit applications to the city engineer. Thus, [relators] could not have *Page 18 
directly appealed to the common pleas court." Id. at ¶ 19. We read this language as suggesting that if the administrative appeal process had been available, then the court would have agreed with the city's position.
 {¶ 30} We also find Duffield v. Barberton, Summit App. No. 22342,2005-Ohio-1817, instructive. In that case, the landowner received a permit to rehabilitate a building. He then applied to the health district for a household sewage disposal installation system. The health district denied his application. The board of health held a hearing regarding the application and denial and denied his permit. He subsequently filed a complaint for damages and injunctive relief, alleging detrimental reliance and discrimination/abusive process. The health district filed a summary judgment motion, arguing in part that the landowner failed to appeal the board of health's decision. The appellate court concluded that the landowner was required to exhaust his administrative remedies before filing his civil action.
 {¶ 31} Similarly, in the case at bar, appellants ultimately are seeking damages based upon a permit denial. Before appellants are entitled to compensation for the alleged wrongful permit denial, they first must follow the administrative appeal process to challenge the permit denial. *Page 19 
 {¶ 32} For these same reasons, the trial court did not err by entering summary judgment in favor of the county defendants. Even if the trial court improperly determined that the county defendants are not proper parties to the mandamus action, we may nevertheless uphold the trial court's judgment on the alternate ground that appellants failed to establish that they lack an adequate remedy in the ordinary course of law.
 {¶ 33} Accordingly, based upon the foregoing reasons, we overrule appellants' first and second assignments of error and affirm the trial court's judgment.
 JUDGMENT AFFIRMED. *Page 20 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellees recover of Appellants costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Klatt, J.* and Abele, J.: Concur in Judgment and Opinion.
* Judge William A. Klatt, from the Tenth Appellate District, sitting by assignment of the Supreme Court of Ohio in the Fourth Appellate District.
 *Page 1