ORIGINAL ACTION JOURNAL ENTRY AND OPINION
{¶ 1} Euclid Beach, L.P. ("Euclid Beach"), the relator, has filed a complaint for a writ of mandamus. Euclid Beach seeks an order from this court which requires Robert Vilkas ("Vilkas"), the City of Cleveland's Chief Building Official/Commissioner of Building and Housing, the respondent, to issue a demolition permit with regard to a building located at 1 Virginia Avenue, Cleveland, Ohio. Vilkas has filed a motion to dismiss and a supplemental motion to dismiss which we deny for the following reasons and issue a writ of mandamus on behalf of Euclid Beach, albeit for reasons different than those cited by Euclid Beach.
 FACTS {¶ 2} Based upon the briefs, affidavits, and exhibits as filed by the parties, the following facts are deemed pertinent to our judgment and opinion. Euclid Beach is the owner of real property located at 1 Virginia Avenue, Cleveland, Ohio, upon which it operates a manufactured home park. Located within the northeast portion of the property at 1 Virginia Avenue is a structure known as the Humphrey Mansion. On November 18, 1993, a public hearing was held before the Cleveland Landmarks Commission and a recommendation was made to the Council of the City of Cleveland to declare the Humphrey Mansion a Cleveland landmark. On June 6, 1994, the Council of the City of Cleveland passed an emergency ordinance, Ordinance No. 366-94, which designated the Humphrey Mansion as a Cleveland landmark. On or about May 21, 2002, Euclid Beach filed an application for the demolition of the Humphrey Mansion with Vilkas. Pursuant to Cleveland Codified Ordinances ("C.C.O.") § 161.05, the application for demolition was forwarded to the Cleveland Landmarks Commission for consideration of a certificate of appropriateness. No decision was rendered by the Cleveland Landmarks Commission with regard to the certificate of appropriateness vis-a-vis the application for demolition as filed on or about May 21, 2002. The application for demolition, as filed on May 21, 2002, remains pending.
 {¶ 3} On February 9, 2005, Euclid Beach filed a second application for demolition of the Humphrey Mansion with Vilkas. The second application for a demolition permit was forwarded to the Cleveland Landmarks Commission, pursuant to C.C.O. § 161.05, for consideration of a separate certificate of appropriateness. On April 8, 2005, Euclid Beach filed a complaint for a writ of mandamus and also filed an application for an alternative writ of mandamus. On April 13, 2005, this court denied the application for an alternative writ of mandamus. On April 28, 2005, the Cleveland Landmarks Commission voted to deny the second certificate of appropriateness. The second application for a demolition permit remains pending with Vilkas.
 STANDARDS FOR A WRIT OF MANDAMUS {¶ 4} In order for this court to issue a writ of mandamus, Euclid Beach must demonstrate that: (1) Euclid Beach possesses a clear legal right to have Vilkas issue a permit which would allow for the demolition of the Humphrey Mansion; (2) Vilkas possesses a legal duty to issue a permit which would allow for the demolition of the Humphrey Mansion; and (3) there exists no plain and adequate remedy in the ordinary course of the law. State exrel. Bardo v. Lyndhurst (1988), 37 Ohio St.3d 106,524 N.E.2d 447; State ex rel. Westchester Estates, Inc. v. Bacon (1980),61 Ohio St.2d 42, 399 N.E.2d 81; State ex rel. Harris v. Rhodes
(1978), 54 Ohio St.2d 41, 374 N.E.2d 641. Additionally, mandamus cannot be used as a substitute for an appeal nor can mandamus be employed in an attempt to gain review of an interlocutory order.State ex rel. Daggett v. Gessaman (1973), 34 Ohio St.2d 55,295 N.E.2d 659; State ex rel. Overmeyer v. Walinski (1966),8 Ohio St.2d 23, 222 N.E.2d 312. Finally, mandamus will not issue to control discretion and cannot be issued if the grounds for relief are doubtful. State ex rel. National City Bank v. Maloney,103 Ohio St.3d 93, 2004-Ohio-4437, 814 N.E.2d 58; Stewart v.Corrigan, 97 Ohio St.3d 80, 2002-Ohio-5316, 776 N.E.2d 103;State ex rel. Tarpy v. Board of Ed. of Washington Court House
(1949), 151 Ohio St. 81, 84 N.E.2d 276.
 ANALYSIS {¶ 5} Euclid Beach, through its complaint for a writ of mandamus, essentially argues that Vilkas possesses a clear duty to issue a permit for the demolition of the Humphrey Mansion based upon it's interpretation of C.C.O. § 161.05, C.C.O. §3105.04, and the allegation that the Humphrey Mansion was never lawfully designated a landmark. We do not find that C.C.O. §161.05 and § 3105.04 require Vilkas to issue a demolition permit and further decline to determine whether the Humphrey Mansion was lawfully designated a Cleveland landmark. We do find, however, that Vilkas possesses a duty to render a decision with regard to the two pending applications for the demolition of the Humphrey Mansion.
 {¶ 6} C.C.O. § 3105.01 provides in pertinent part that:
(a) Except as provided in OAC 4101:2-1-13(B), no person, firm or corporation shall erect, construct, enlarge, alter, repair, move or demolish a building or structure, or install any equipment or other appurtenances the installation of which is regulated by this OBBC or Building Code, or cause the same to be done, without first making application to the Commissioner and obtaining a permit therefor unless OBBC or this Building Code specifically provides that such work may be done without a permit.
 {¶ 7} C.C.O. § 3105.04 provides in pertinent part that:
(a) Approval.
(1) The Commissioner and other administrative officers having jurisdiction shall act upon an application for a permit withoutunreasonable or unnecessary delay. If the administrative officer having jurisdiction is satisfied that the work described in an application for permit and the plans filed therewith conform to the requirements of OBBC and this Building Code and other applicable laws, ordinances, rules and regulations, he shall issue a permit therefor to the applicant upon payment of the fee, if any, prescribed by ordinance. . . .
(d) Disapproval. If the applications for a permit, or the plans and specifications filed therewith, or the application for approval of an amendment, describes work which does not conform to the requirements of OBBC and this Building Code or other applicable laws, ordinances, rules or regulations, or does not contain sufficient information, the administrative officer having jurisdiction shall return the plans and specifications to the applicant with his refusal to issue such permit or approval. When requested by the applicant, such refusal shall be in writing, and shall contain the reasons therefor. (Emphasis added).
 {¶ 8} O.C.C. § 161.05 provides in pertinent part that: No person owning, renting or occupying property which has been designated a landmark or which is situated in a designated landmark district shall make any environmental change in such property unless a certificate of appropriateness has been previously issued by the Commission with respect to such environmental change. The following procedures shall apply to all alterations, demolitions, removals or constructions of such property in the City:
1. (a) Any application to the Division of Building and Housing for a building permit for an environmental change shall also be deemed an application for a certificate of appropriateness, and shall be forwarded to the Commission, together with copies of all detailed plans, designs, elevations, specifications and documents relating thereto, within seven days after receipt thereof. An application for a certificate of appropriateness may be filed by the applicant directly with the Commission at the same time that an application for a building permit is filed or in lieu of filing for a building permit, if no building permit is required for the proposed environmental change.
(b) The Commission shall evaluate applications to determine whether or not the environmental change proposed by the applicant will adversely affect any significant historical or aesthetic feature of the property and to determine whether or not the environmental change proposed by the applicant is consistent with the spirit and purposes of this chapter. . . .
(c) If the Commission finds that the environmental change proposed by the applicant will not adversely affect any significant historical or aesthetic feature of the property and is appropriate and consistent with the spirit and purposes of this chapter, or will remedy conditions imminently dangerous to life, health or property, as determined in writing by the Division of Building and Housing or the Division of Fire or the Department of Public Health, then the Commission shall issue a certificate of appropriateness.
(d) If the Commission finds that the environmental change proposed by the applicant will adversely affect any significant historical or aesthetic feature of the property or is inappropriate or inconsistent with the spirit and purposes of this chapter, the Commission may either deny the application or delay action on the application. Any decision to delay action on the application shall be by mutual agreement of the Commission and the applicant and shall be for a period not to exceed six (6) months. During the delay period, the Commission shall conduct further investigation with regard to the proposed environmental change, conduct negotiations with the applicant and any other party in an effort to find a means of preserving the property, or explore alternatives to the proposed environmental change. The Commission may also investigate the feasibility of all available ways and means of preserving the improvement, including without limitation, inducing by contract or other consideration the creation of covenants restricting the use of property, leasing and subleasing the property for the purposes of preservation and acquiring by eminent domain or contract or conveyance all or any part of or interest in the property.
(e) At the end of the delay period, the Commission shall either approve or deny the application, or delay action. A decision to delay action, at the end of one delay period, shall be by mutual agreement of the Commission and the applicant and shall be for a period not to exceed six (6) months. The Commission shall only agree to a second and final delay period if the Commission determines that this additional time period may be useful in securing an alternative to the proposed environmental change. At the end of the second and final delay period, the Commission shall either approve or deny the application for a certificate of appropriateness.
(f) Upon the issuance, denial or a delay in the issuance of a certificate of appropriateness, the Commission shall give written notices of the issuance, denial or delay in the issuance to the applicant and the Division of Building and Housing. The Commission shall provide written notice of the issuance, denial or delay in the issuance of a certificate of appropriateness to the applicant and the Division of Building and Housing within forty five (45) days of the receipt by the Commission of an application from either the applicant or the Division of Building and Housing.
(g) If no action has been taken by the Commission on an application for a certificate of appropriateness to approve, deny or delay action within forty-five (45) days after such application has been received by the Commission, the certificate of appropriateness shall be deemed issued.
 {¶ 9} Contrary to the argument of Euclid Beach, we find that the operation of C.C.O. § 161.05 (g) does not automatically result in the granting of a permit which would allow for the demolition of the Humphrey Mansion. When read in pari materia, C.C.O. § 3105.01, C.C.O. § 3105.04, and C.C.O. § 161.05 provide that when an application for the demolition of any Cleveland landmark is made to the Building and Housing Commissioner, the Cleveland Landmarks Commission shall consider a separate application for a certificate of appropriateness. See C.C.O. §161.05(a). The purpose of the application for a certificate of appropriateness is to determine whether the effect of the primary application for a permit, such as a demolition permit, will adversely affect any significant historical or aesthetic feature of the property and to determine whether or not the change contemplated by the primary permit is consistent with the spirit and purpose of C.C.O. Chapter § 161. The decision of the Cleveland Landmarks Commission, with regard to an application for a certificate of appropriateness, is purely advisory in nature and is used by the Building and Housing Commissioner in order to determine whether the primary application for a permit should be granted or denied.
 {¶ 10} In the case sub judice, Euclid Beach filed two separate applications for a demolition permit in an effort to demolish the Humphrey Mansion. Since the Humphrey Mansion had been declared a Cleveland Landmark in 1993, C.C.O. § 161.05 required that the Cleveland Landmarks Commission determine whether the requested demolition of the Humphrey Mansion adversely affected any significant historical or aesthetic features of the property and further determine whether or not the proposed demolition of the Humphrey Mansion was consistent with the spirit and purpose of C.C.O. Chapter 161. Any decision as rendered by the Cleveland Landmarks Commission with regard to the application for a certificate of appropriateness, vis-a-vis the application for demolition of the Humphrey Mansion, was purely advisory to Vilkas regardless of whether the decision was rendered by the Cleveland Landmarks Commission or a result of the default provision of C.C.O. § 161.05(g). Thus, Vilkas was not required to issue a demolition permit to Euclid Beach as based upon the initial application for a permit and the failure of the Cleveland Landmarks Commission to issue a decision with regard to the certificate of appropriateness proceedings that occurred in 2003 or the second application for a permit and the denial of the second certificate of appropriateness.[1] It must also be noted that Vilkas is required to issue a demolition permit only if he is satisfied that the requested demolition conforms with the Ohio Building Code, the Cleveland Building Code, and any other laws, ordinances, rules and regulations. See C.C.O. §3105.04(a). Euclid Beach has failed to demonstrate that it has complied with all applicable laws, ordinances, and regulations prior to the filing of either application for a demolition permit. Cf. State ex rel. Partis v. Warren City Bd. Of Health,63 Ohio St.3d 777, 1992-Ohio-131, 591 N.E.2d 711; State ex rel.Eliza Jennings, Inc. v. Nobel (1990), 49 Ohio St.3d 71,551 N.E.2d 128; The Chapel v. Solon (1988), 40 Ohio St.3d 3,530 N.E.2d 1321.
 {¶ 11} Euclid Beach, in support of its complaint for a writ of mandamus, also argues that the process employed to designate the Humphrey Mansion as a Cleveland landmark was unlawful and thus not a bar to the granting of either demolition permit. This court, however, will not examine the process employed to designate the Humphrey Mansion a Cleveland landmark since such a determination would involve a declaratory judgment vis-a-vis emergency Ordinance No. 366-94 as passed by the Council of the City of Cleveland on June 6, 1994. If the allegations of a complaint for a writ of mandamus indicate that the real objects sought are a declaratory judgment, the complaint does not state a cause of action in mandamus and must be dismissed for lack of jurisdiction. State ex rel. Grendell et al. v. Davidson, Speakerof the House, et al., 86 Ohio St.3d 629, 1999-Ohio-130,716 N.E.2d 704; State ex rel. Youngstown v. Mahoning Cty. Bd. OfElections (1995), 72 Ohio St.3d 69, 647 N.E.2d 769.
 {¶ 12} Vilkas, however, does possesses a duty which will be enforced by this court through a writ of mandamus. C.C.O. §3105.04(a)(1) specifically provides that Vilkas, having jurisdiction over the permit application procedure, "shall act upon an application for a permit without unreasonable or necessary delay." No decision has been rendered by Vilkas with regard to the two pending applications for a demolition permit and an unreasonable period of time and unnecessary delay has elapsed since the filing of each separate application for demolition. Euclid Beach possesses a right to have it's applications for demolition either approved or disapproved and Vilkas possesses a duty to either approve or disapprove the two applications for demolition. In addition, Euclid Beach has no other legal recourse which would require Vilkas to issue a decision with regard to the two pending applications for demolition of the Humphrey Mansion. State ex rel. Hanson v.Guernsey Cty. Bd. Of Commrs. (1992), 65 Ohio St.3d 545,605 N.E.2d 378; State ex rel. Van Curen v. Adult Parole Auth.
(1976), 45 Ohio St.2d 298, 345 N.E.2d 75.
 {¶ 13} Accordingly, we issue a writ of mandamus on behalf of Euclid Beach, albeit for reasons different than those raised by Euclid Beach. Within fourteen days of the date of this entry, Vilkas is ordered to act upon the two pending applications for demolition of the Humphrey Mansion and either approve or disapprove said pending applications and immediately provide notice of the decisions to Euclid Beach. Costs to Vilkas. Any requests for attorney fees are denied. It is further ordered that the Clerk of the Eighth District Court of Appeals serve notice of this judgment upon all parties as required by Civ.R. 58(B).
Writ granted.
Sweeney, P.J., concurs.
 Kilbane, J., concurs.
[1] The Cleveland Landmarks Commission, on April 28, 2005, voted to deny the second certificate of appropriateness that was considered vis-a-vis the second application of a demolition permit.