[Cite as *In re R.S.*, 2017-Ohio-2835.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| | | |
|---|---|---|
| IN RE: R.S. | | C.A. Nos. 27857 |
| | | 28073 |

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DN 13-10-644

DECISION AND JOURNAL ENTRY

Dated: May 17, 2017

CALLAHAN, Judge.

{¶1}    Appellant, Linda S. ("Mother"), appeals from two judgments of the Summit County Court of Common Pleas, Juvenile Division: one that placed her minor child in the legal custody of a maternal aunt, and a later judgment that decreased her weekly parenting time with the child from two to three unsupervised, overnight visits to two supervised visits of no more than four hours.  This Court affirms.

I.

{¶2}    Mother is the biological mother of R.S., born September 7, 2011, the only child at issue in this appeal.  The child's father did not appeal from the trial court's judgments.  Mother has older children who were removed from her custody many years ago because Mother had serious mental health problems and abused some of her children.  Mother was convicted of felony child endangering and served a seven-year term of incarceration.  Although Mother would later describe her acts of abuse as extreme physical discipline, CSB described the acts as torture,

explaining that Mother had repeatedly inflicted pain on her children by beating and burning them, forcing them to eat their own vomit, and withholding medical treatment.

{¶3} Mother has suffered from serious mental health problems since childhood and has received treatment only intermittently over the years. On October 2, 2013, R.S. was removed from Mother's custody pursuant to Juv.R. 6 because Mother was admitted to a hospital psychiatric ward and CSB was unable to find a relative to care for the child at that time. Mother was not taking her prescribed psychiatric medications and was exhibiting symptoms of delusional thinking. Mother remained in treatment for 90 days pursuant to an involuntary commitment order of the probate court.

{¶4} Mother later agreed that R.S. should be adjudicated a dependent child and be placed in the temporary custody of CSB. Mother's visits with R.S. were initially supervised because her irrational thinking posed a threat to the child. After Mother appeared to have stabilized her mental health through counseling and medication, the trial court expanded Mother's visits with R.S. to unsupervised, overnight visits in Mother's home.

{¶5} CSB eventually moved to place R.S. in the legal custody of a maternal aunt ("Aunt"), with whom he had been living for the past year. Mother alternatively moved for legal custody of R.S. Prior to the final dispositional hearing, CSB moved for an order to relieve it from making reasonable efforts to reunify R.S. with Mother because Mother had been convicted of felony child endangering with respect to the child's older siblings. *See* R.C. 2151.419(A)(2)(a). The trial court issued a reasonable efforts bypass order two days later.

{¶6} The matter proceeded to a hearing before a magistrate on the competing motions for legal custody. Evidence at the hearing revealed that, although Mother was taking psychiatric medication, she was no longer in counseling and CSB, mental health experts, and the guardian ad

litem continued to have concerns about the ongoing stability of her mental health. The magistrate decided that legal custody to Aunt was in the best interest of R.S. Mother filed timely objections to the magistrate's decision. The trial court later overruled her objections and placed R.S. in the legal custody of Aunt. The trial court also ordered, among other things, that Mother pay no child support, that she have two overnight visits with R.S. each week, and that Aunt had the discretion to schedule a third overnight visit depending on "her assessment of Mother's stability."

{¶7} One month later, without notifying Aunt or CSB, Mother contacted Akron Children's Hospital and R.S.'s counselor to report that R.S. had disclosed numerous acts of abuse by Aunt. An investigation failed to reveal any abuse. Instead, CSB became concerned that Mother was exhibiting symptoms of distorted thinking, as her allegations were incredible and tended to reflect her own acts or thoughts about abuse of children.

{¶8} CSB moved to restrict Mother's visits with R.S. and requested an immediate hearing on the motion. The agency requested that Mother's visits with R.S. be supervised because it was concerned about Mother's mental health and believed that she posed a risk to R.S. if unsupervised visits were to continue. That same day, the trial court issued a temporary order that Mother's visits with R.S. be supervised, pending a hearing and further order of the court. Following a hearing before a magistrate and, after overruling Mother's objections to the magistrate's decision, the trial court ordered that Mother's visits be supervised and that they be reduced to two visits of "up to four hours."

{¶9} Mother appealed from each judgment and her appeals were later consolidated. She raises four assignments of error to the trial court's legal custody judgment (Appeal Number 27857) and two assignments of error to its modification of her parenting time with R.S. (Appeal

Number 28073).  This Court will address each appeal separately and will consolidate some of the assigned errors for ease of review.

II.

Appeal Number 27857

**ASSIGNMENT OF ERROR NUMBER ONE**

THE JUVENILE COURT['S] AWARD OF LEGAL CUSTODY TO [AUNT] IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶10}** Mother's first assignment of error briefly argues that R.S. should have been placed with her rather than in the legal custody of Aunt.  "Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child."  *See In re K.H.*, 9th Dist. Summit No. 27952, 2016-Ohio-1330, ¶ 12.  "Although there is no specific test or set of criteria set forth in the statutory scheme, courts agree that the trial court must base its decision [regarding legal custody] on the best interest of the child."  *In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23, citing *In re Fulton*, 12th Dist. Butler No. CA2002-09-236, 2003-Ohio-5984, ¶ 11.

**{¶11}** Mother does not make an argument about the best interest of R.S. but instead argues that "there is no reason why" she should not have received legal custody of him because she had made progress on the reunification requirements of the case plan.  Although Mother's progress on the case plan may have been relevant to the best interest of R.S., it was not dispositive.  *See*, *e.g.*, *In re K.C.*, 9th Dist. Summit Nos. 26992, 26993, 2014-Ohio-372, ¶ 22, citing *In re B.G.*, 9th Dist. Summit No. 24187, 2008-Ohio-5003, ¶ 21.

**{¶12}** Moreover, the record reveals that Mother had not fully complied with the mental health component of the case plan.  R.S. was removed from Mother's custody because she has

serious and long-standing mental health problems and was not engaged in any treatment when this case began. Mother had reported mental health problems dating back to her childhood, but she tended to minimize her mental illness and her need for ongoing treatment.

{¶13} Several mental health providers testified at the hearing about Mother's mental illness. Mother was diagnosed with delusional disorder, persecutory type, which is characterized by distorted thinking, including false beliefs, unjustified suspicions of others, and intense emotions. Mother required psychiatric medication to control her delusions. Mother was also diagnosed with a personality disorder, which is characterized by a lack of insight and judgment and an inability to accept responsibility for her actions. Mother exhibited "maladaptive personality traits" that included a history of instability and irresponsibility. Mother's diagnoses are pervasive and require long-term treatment through counseling and medication. At the time of the hearing, Mother was taking medication but was not involved in any counseling.

{¶14} Mother's pervasive mental health diagnoses were linked to her past abuse of her older children, yet Mother did not understand how her abuse of her older children was related to her current ability to provide a safe home for R.S. Mother failed to accept any responsibility for the severe abuse that she imposed on her older children and she was not willing and/or able to discuss the details of that abuse, except that she burned one of the children. Mother's own testimony demonstrated a lack of insight into the relevance of her past abusive acts. She suggested that she posed no threat to R.S. because she is now older, no longer abuses drugs or alcohol, and does not use physical discipline.

{¶15} Although Mother's observed interaction with R.S. had been appropriate, witnesses expressed concern that Mother has engaged in mental health treatment only intermittently during her life and has not always sought treatment voluntarily. At the beginning

of this case, Mother did not seek treatment until she was ordered by the probate court, and then the juvenile court, to do so. Several witnesses, including one of Mother's former counselors, expressed their belief that Mother may again stop mental health treatment if the juvenile court were no longer involved in her life.

{¶16} On the other hand, there was undisputed evidence that R.S. had settled into a loving and stable environment in Aunt's home, where all of his needs were being met. Aunt has no mental health or substance abuse problems, has stable income and housing, and CSB and the guardian ad litem supported her having legal custody of R.S. Because Mother has failed to demonstrate that legal custody to Aunt was not in the best interest of R.S., her first assignment of error is overruled.

## ASSIGNMENT OF ERROR NUMBER TWO

THE JUVENILE COURT COMMITTED REVERSIBLE AND PLAIN ERROR WITH ITS LACK OF REASONABLE EFFORTS FINDINGS PROMOTING REUNIFICATION WITH THE FAMILY.

{¶17} Mother's second assignment of error pertaining to the legal custody judgment is that the trial court erred by failing to make findings that CSB had made reasonable efforts to reunify R.S. with Mother. R.C. 2151.419(A)(1) requires a trial court to make a reasonable efforts finding at a legal custody hearing "[e]xcept as provided in division (A)(2) of this section[.]" R.C. 2151.419(A)(2)(a)(iii) provides that, if the parent from whom the child was removed has been convicted of felony child endangering under R.C. 2919.22(B), "the court shall make a determination that the agency is not required to make reasonable efforts" to prevent the continued removal of the child from the home.

{¶18} Prior to the final dispositional hearing in this case, CSB moved for a reasonable efforts bypass based on Mother's prior felony child endangering convictions of R.S.'s siblings

under R.C. 2919.22(B) and the trial court in this case excused CSB from making reasonable reunification efforts. Consequently, the trial court was not required to make reasonable efforts findings at the final dispositional stage of the proceedings and did not err in failing to do so. Mother's second assignment of error is overruled.

## ASSIGNMENT OF ERROR NUMBER THREE

THE JUVENILE COURT COMMITTED REVERSIBLE AND PLAIN ERROR WITH ITS CHILD SUPPORT ORDERS.

## ASSIGNMENT OF ERROR NUMBER FOUR

APPELLANT WAS PREJUDICED BY INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

**{¶19}** Mother's third and fourth assignments of error pertaining to the legal custody judgment will be consolidated because they are closely related. Through her third assignment of error, Mother argues that the trial court erred in its calculation of child support. Through her fourth assignment of error, Mother argues, in part, that her trial counsel was ineffective for failing to challenge the child support calculation. Although she assigns error to the manner in which the trial court calculated child support, the court ordered her to pay zero dollars in child support.

**{¶20}** "'An appeal lies only on behalf of the party who is aggrieved by the judgment.' The sole purpose of an appeal is to provide the appellant an opportunity to seek relief in the form of a correction of errors of the lower court that injuriously affected [her]." (Internal citations omitted.) *BFG Fed. Credit Union v. CU Lease, Inc.,* 9th Dist. Summit No. 22590, 2006-Ohio-1034, ¶ 36. "The burden is on the appellant to establish that [she] is an aggrieved party whose rights have been adversely affected by the trial court's judgment." *State v. Senz,* 9th Dist. Wayne No. 02CA0016, 2002–Ohio–6464, ¶ 5. Because Mother has not argued or demonstrated that she

was aggrieved by the trial court's child support calculations, this Court will not reach the merits of those arguments.

{¶21} Mother also argues through her fourth assignment of error that her trial counsel was ineffective for not immediately moving the trial court to order CSB to comply with the pre-hearing order that expanded her visitation with R.S. Before this problem was ultimately resolved upon a motion filed by Mother's trial counsel, the record suggests that CSB did not fully comply with the expanded visitation schedule for approximately two to three months. By the time of the final dispositional hearing, all parties were complying with the expanded visitation schedule. Mother's challenge on appeal is that her trial counsel was ineffective for not resolving the problem sooner and, as a result, she missed two to three months of expanded visits with her child.

{¶22} Even if trial counsel erred by failing to seek an earlier correction of the parties' failure to comply with the expanded visitation order, this Court cannot provide Mother with any effective relief. The duty of this Court on appeal "is to decide actual controversies * * * [and not] to declare principles or rules of law which cannot affect the matter in issue in the case before it." *State ex rel. Eliza Jennings, Inc. v. Noble*, 49 Ohio St.3d 71, 74 (1990). This Court will not decide an issue if it is "impossible for this court, if it should decide the case in favor of the [appellant], to grant [her] any effectual relief whatever[.]" *Id.*

{¶23} Although Mother was prejudiced by the parties' failure to comply with the expanded visitation schedule for two to three months, that time period has passed and there is nothing that this Court can do to enforce a temporary visitation order that has already expired. *See, e.g.*, *Stemock v. Stemock*, 11th Dist. Trumbull No. 2007-T-0072, 2008-Ohio-1131, ¶ 23-24. Because this Court cannot afford Mother any effective relief, we are unable to address the merits

of her second argument under her fourth assignment of error. Because she fails to raise any justiciable controversies, this Court will not reach the merits of Mother's third and fourth assignments of error.

Appeal Number 28073

{¶24} Mother also timely appealed from the trial court's post-judgment order that decreased her weekly visitation time with R.S. from three unsupervised, overnight visits in her home to two supervised visits of up to four hours. Although CSB argues that the order decreasing Mother's visitation time is not a final, appealable order, this Court is not persuaded by that argument. CSB does not dispute that Mother has a substantial right to spend time with her child or that the trial court affected that right by seriously decreasing the time that she can spend with her child each week and by imposing a requirement that the visits be supervised rather than unsupervised.[1] Instead, CSB suggests that Mother will have the opportunity to challenge this order at some time in the future. We disagree.

{¶25} CSB relies on *In re Boehmke*, 44 Ohio App.3d 125 (8th Dist.1988) and *In re T.G.*, 12th Dist. Butler No. 2008-01-026, 2008-Ohio-4165, both of which involved appeals from temporary visitation orders entered by the juvenile court prior to its final disposition of the child. The appeal in this case is from a trial court's post-judgment modification of the visitation schedule. Consequently, this Court will address the merits of Mother's two consolidated assignments of error.

### ASSIGNMENT OF ERROR NUMBER ONE

THE TRIAL COURT'S DECISION TO OVERRULE MOTHER'S OBJECTIONS TO THE MAGISTRATE'S DECISION WAS AN ABUSE OF DISCRETION.

---

[1] This Court need not address the issue of whether a minor modification of post-judgment visitation time would constitute a final, appealable order.

## ASSIGNMENT OF ERROR NUMBER TWO

THE TRIAL COURT'S FACTUAL FINDINGS THAT MOTHER "HELD HERSELF OUT AS THE LEGAL CUSTODIAN" OF THE MINOR CHILD, AND THAT "SHE DOES NOT BELIEVE THE ALLEGATIONS" OF SEXUAL ABUSE BY THE MINOR CHILD, WERE NOT SUPPORTED BY COMPETENT, CREDIBLE EVIDENCE.

{¶26} Mother's assignments of error pertaining to the modification of her parenting time with R.S. challenge some of the trial court's factual findings. During the hearing, CSB presented evidence about Mother calling Akron Children's Hospital and then taking R.S. there because, according to her, R.S. had reported incidents of abuse by Aunt. The focus of these post-judgment proceedings, however, was on Mother's behavior and the state of her mental health.

{¶27} The evidence presented at the hearing included that Mother did not contact CSB or Aunt about any of this, but that she called Akron Children's Hospital on June 29, 2015 to report that R.S. had told her about Aunt sexually abusing him. Four days later, Mother took R.S. to the emergency room at Akron Children's Hospital. At that time, according to the social worker who spoke to her, Mother had no recollection of calling the hospital before, but instead said that CSB had told her to come. Mother told the social worker that R.S. had told her about several incidents of abuse by Aunt, including that she made him put his penis in her butt and got poop on his penis, that she burned his leg with a lighter as a form of punishment, and that she locked him in his room and left him alone in the home at night. The social worker, who was trained to interview children about abuse, spoke to R.S., who did not corroborate anything that Mother had told her.

{¶28} Mother also shared similar allegations with the counselor for R.S. The counselor spoke to R.S., but R.S. did not substantiate any of the abuse allegations. In fact, he told his

counselor that it was Mother who had locked him in his room and that he had become very upset about it.

{¶29} Aunt explained to the caseworker that R.S. had a bowel movement in his training pants, which had gotten on his penis, and that she had to clean him. Aunt believed that Mother must have misunderstood what R.S. told her about the incident. CSB's investigation ruled out any abuse by Aunt. Instead, its investigation gave rise to renewed concerns that Mother's thinking had become distorted and that she posed a threat to R.S. if their visits were not supervised. Despite repeated requests that she allow CSB or the guardian ad litem to speak to her mental health providers to assess the status of her treatment, Mother refused to do so.

{¶30} Mother's only challenge on appeal is that the trial court made unsupported factual findings that she did not believe that R.S. had been sexually abused and that she held herself out as the child's legal custodian when she took him to the hospital. Those factual findings, even if incorrect, had no bearing on the trial court's concern about the stability of Mother's mental health. The evidence at the hearing emphasized Mother's extensive and unsubstantiated allegations about Aunt, which implied that her thinking had again become distorted. Mother's strange behavior, coupled with her refusal to allow the agency or guardian ad litem to communicate with her mental health providers, were the focus of the trial court's decision to restrict Mother's visits with R.S. Because Mother has failed to demonstrate any prejudicial error in the trial court's decision, her assignments of error are overruled.

### III.

{¶31} Mother's first and second assignments of error in appeal number 27857 are overruled. Her third and fourth assignments of error in that appeal were not addressed because they did not raise justiciable challenges. Mother's assignments of error in appeal number 28073

are overruled. The judgments of the Summit County Court of Common Pleas, Juvenile Division, are affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

HENSAL, P. J.
CARR, J.
CONCUR.

APPEARANCES:

DENISE E. FERGUSON, Attorney at Law, for Appellant.

SUSAN J. LAX, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

JOSEPH KERNAN, Guardian ad Litem.