[Cite as *In re A.E.*, 2018-Ohio-2349.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

IN RE: A.E.
    A.H.
    R.H.

C.A. No.    17CA011192

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE Nos.    16JC47691
                16JC47692
                16JC47693

DECISION AND JOURNAL ENTRY

Dated: June 18, 2018

---

CARR, Judge.

{¶1} Appellant, D.W. ("Mother"), appeals from a judgment of the Lorain County Court of Common Pleas, Juvenile Division, that placed her three minor children in the legal custody of relatives. This Court affirms in part, reverses in part, and remands the matter for clarification about Mother's visitation with one of the children.

I.

{¶2} Mother is the biological mother of A.E., born September 28, 2010; A.H, born September 25, 2012; and R.H., born September 12, 2013. At the time Lorain County Children Services ("LCCS") became involved with this family, the children were living with Mother. The agency received a referral because, during a visit between all three children and the father of A.H. and R.H. ("Father H."), a family member observed bruises and raised welts on the buttocks

of A.E. A further investigation by LCCS revealed that Mother had used excessive physical discipline on the children on multiple occasions.

{¶3} Mother would also later admit that she had been diagnosed with bipolar disorder as a teenager and had been involuntarily hospitalized for psychiatric treatment on several occasions because she did not consistently engage in mental health treatment. LCCS was also concerned that Mother had not been meeting the children's basic needs.

{¶4} On January 29, 2016, LCCS filed complaints alleging that A.E. was an abused child and that all three children were neglected and dependent. The children were later adjudicated accordingly and placed in the temporary custody of LCCS. Later, A.E. was placed in the temporary custody of her paternal grandmother ("Grandmother") and A.H. and R.H. were placed in the temporary custody of Father H., with all three children under the protective supervision of LCCS.

{¶5} The case plan goals for Mother focused on her addressing her mental health problems and her ability to appropriately meet her children's daily needs. Among other things, Mother was required to attend parenting classes and obtain both psychological and psychiatric assessments and follow any treatment recommendations. Mother attended parenting classes but did not demonstrate that she could implement the skills that she had been taught. Moreover, she never obtained a psychological or psychiatric assessment. She did engage in some counseling but continued to exhibit inappropriate behavior around her children and others.

{¶6} Ultimately, Mother moved to have the children returned to her legal custody. Because the children were doing well in the homes of their respective relative caregivers, LCCS alternatively moved to have A.E. placed in the legal custody of Grandmother and to have A.H.

and R.H. placed in the legal custody of Father H. A dispositional hearing was held before a magistrate.

{¶7}    On August 7, 2017, the magistrate filed a decision that A.E. be placed in the legal custody of Grandmother and that A.H. and R.H. be placed in the legal custody of Father H. The trial court adopted the decision and independently entered judgment the same day.

{¶8}    On August 29, 2017, Mother's trial counsel filed objections to the magistrate's decision. LCCS later moved to dismiss Mother's objections because they were untimely. *See* Juv.R. 40(D)(3)(b)(i). The trial court ultimately rejected Mother's objections because they were untimely.

{¶9}    Nevertheless, on September 1, 2017, Mother filed a timely pro se notice of appeal from the trial court's legal custody judgment. She was later appointed counsel, who filed a brief on her behalf that raises three assignments of error.

II.

## ASSIGNMENT OR ERROR I

MOTHER RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HER TRIAL ATTORNEY DID NOT OBJECT TO HEARSAY, DID NOT REQUEST A NEW GAL AND DID NOT FILE TIMELY OBJECTIONS.

{¶10}    Mother's first assignment of error is that she received ineffective assistance of trial counsel. To establish a claim of ineffective assistance of counsel, Mother must demonstrate that her trial counsel's performance was deficient and that the deficient performance prejudiced her case. *Strickland v. Washington* (1984), 466 U.S. 668, 687 (1984). A "deficient performance" is one that fell below an objective standard of reasonableness. *Id.* at 687-88. To establish prejudice, Mother must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 694.

**{¶11}** Mother argues that she received ineffective assistance because her trial counsel failed: 1) to object to hearsay evidence presented at the legal custody hearing; 2) to request a new guardian ad litem for the children; and 3) to file timely objections to the magistrate's legal custody decision. This Court will address each issue in turn.

**{¶12}** Mother has failed to demonstrate any deficiency in trial counsel's performance for failing to object to hearsay evidence. Hearsay evidence was admissible at the legal custody hearing because the rules of evidence do not apply at dispositional hearings other than a hearing on a motion for permanent custody. *In re J.G.*, 9th Dist. Wayne No. 12CA0037, 2013-Ohio-417, ¶ 38, citing Juv.R. 34(B)(2); *see also* Juv.R. 34(I).

**{¶13}** Mother further asserts that her trial counsel was ineffective for failing to request a new guardian ad litem because the guardian ad litem did not conduct a sufficiently through investigation of this case. Even if Mother could demonstrate that her trial counsel should have requested a new guardian ad litem, she has failed to demonstrate that the result of the proceedings would have been different if a new guardian ad litem had been appointed. As will be explained below, the evidence before the trial court overwhelmingly supported its decision to place the children in the legal custody of their respective relatives.

**{¶14}** Finally, Mother argues that her trial counsel's performance was deficient because counsel filed untimely objections to the magistrate's decision, so those objections were not considered by the trial court. Trial counsel's untimely objections also failed to preserve for appellate review her argument that the legal custody decision was not supported by the evidence presented at the hearing. Juv.R. 40(D)(3)(b)(iv).

**{¶15}** "Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based

solely on the best interest of the child." *See In re K.H.*, 9th Dist. Summit No. 27952, 2016-Ohio-1330, ¶ 12. "Although there is no specific test or set of criteria set forth in the statutory scheme, courts agree that the trial court must base its decision on the best interest of the child." *In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23, citing *In re Fulton*, 12th Dist. Butler No. CA2002-09-236, 2003-Ohio-5984, ¶ 11.

{¶16} The juvenile court is guided by the best interest factors set forth in R.C. 2151.414(D) relating to permanent custody. *In re B.G.*, 9th Dist. Summit No. 24187, 2008-Ohio-5003, ¶ 9, citing *In re T.A.*, 9th Dist. Summit No. 22954, 2006-Ohio-4468, ¶ 17. Those factors include the interaction and interrelationships of the children, their wishes, their custodial history, and the children's need for permanence. *In re T.A.* at ¶ 17. The juvenile court may also look to the best interest factors in R.C. 3109.04(F)(1) for guidance. *In re K.A.*, 9th Dist. Lorain Nos. 15CA010850, 15CA010860, 2017-Ohio-1, ¶ 17. Of relevance here, those additional factors include the children's adjustment to their current environments and the mental and physical health of all persons involved. *See* R.C. 3109.04(F)(1).

{¶17} Mother's interaction with the children during this case was limited to supervised visits because she never completed a psychiatric or psychological assessment. Several witnesses observed that Mother's behavior during the visits sometimes was appropriate but many times was not. Mother had attended a few counseling sessions with A.E. to learn how to appropriately discipline and interact with the child, but her attendance and participation were sporadic. A.E.'s counselor testified that Mother was not receptive to her suggestions and refused to implement what the counselor had taught her. Mother eventually stopped coming to the counseling sessions.

{¶18} Although several witnesses focused on a visit during which Mother threw a snack-sized bag of potato chips at Father H., there was more significant evidence before the trial court to demonstrate that Mother sometimes lost her temper and exhibited concerning behavior toward her children. For example, during one visit several months before the hearing, Mother became upset with A.E. because she did not respond to her attempt to verbally redirect the child's behavior, so Mother put her hands around A.E.'s neck and physically dragged her across the yard. Grandmother saw the incident from inside the house, came outside, and immediately terminated the visit. A.E. had visible red marks on her neck and was very upset after the incident.

{¶19} Mother participated in parenting programs, but she called one of her instructors as a witness, who testified that Mother had to be repeatedly prompted to implement what she had learned about appropriate interaction during her one session with A.E. Mother began individual counseling a few months before the hearing, but she had not reengaged in any psychiatric medication management. The caseworker testified that, although Mother's behavior had improved, she continued to require redirection during her visits with the children.

{¶20} Mother's mental health was also a relevant best interest factor to consider under R.C. 3109.04(F)(1)(e). Mother testified that she has been receiving Social Security Disability benefits since she was a teenager because she has bipolar disorder and had been involuntarily hospitalized for psychiatric treatment three or four times in her life. Although Mother had taken psychiatric medications in the past, she was not currently taking any. Mother reengaged in counseling a few months before the hearing, but LCCS remained concerned that she had failed to obtain a psychological or psychiatric assessment during this case.

**{¶21}** The trial court also considered the custodial history of the children. During this case, the children had lived in temporary placements with their respective relatives for approximately 15 months and were in need of a legally secure permanent placement. Another relevant factor under R.C. 3109.04(F)(1) included the children's adjustment to their current environments. *See* R.C. 3109.04(F)(1)(d). All three children had adjusted well to the homes of their respective relatives.

**{¶22}** A.E., who had serious behavioral problems, had been engaged in counseling for almost one year, and was doing well in Grandmother's home. Her counselor testified that, when she began working with A.E., the child's behavior was "extremely oppositional[.]" Grandmother had been consistently involved in A.E.'s counseling, cooperated with the counselor, and was able to set appropriate boundaries for A.E. During A.E.'s time in counseling and living with Grandmother, her behavior and school performance had improved significantly. The caseworker observed that A.E. had become a "different child" during this case. A.E. was closely bonded with Grandmother, who was consistently meeting all of her needs in a safe and stable environment. Grandmother also had been facilitating A.E.'s visits with Mother and her other siblings and was prepared to continue doing so.

**{¶23}** At the time of the hearing, A.H. and R.H. had been living with Father H. for more than one year. Several witnesses testified that Father H. was appropriately meeting all of his children's needs including their speech delays, which were being addressed through speech therapy. Father H. had the support of his children's paternal grandmother, who provided childcare for the children while he worked.

**{¶24}** Given the evidence about the children's best interest, the trial court reasonably concluded that it was in the best interest of A.E. to be placed in the legal custody of Grandmother

and for A.H. and R.H. to be placed in the legal custody of Father H. Consequently, Mother has failed to demonstrate that she was prejudiced by trial counsel's failure to file timely objections to the magistrate's decision. Because Mother has failed to demonstrate that she was prejudiced by any deficient performance by her trial counsel, her first assignment of error is overruled.

## ASSIGNMENT OR ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR BY ORDERING MOTHER TO HAVE BOTH UNSUPERVISED AND SUPERVISED VISITATION WITH THE SAME CHILD.

{¶25} Mother's second assignment of error is that the trial court committed reversible error in setting forth her parenting time with A.E. The magistrate had decided that Mother should have unsupervised visitation with each of her children. Both Mother and LCCS point out that the trial court explicitly adopted the magistrate's decision, followed the magistrate's recommendation for her parenting time with A.H. and R.H., but then set forth a schedule for Mother's parenting time with A.E. that did not follow the magistrate's recommendation. Specifically, the trial court ordered, in two separate paragraphs, that Mother have weekly supervised visits with A.E. for at least one and one-half hours and that she also have at least three hours of unsupervised visits.

{¶26} The parties agree that the trial court's judgment is internally inconsistent because it orders that Mother will have both supervised and unsupervised visitation with A.E. For that reason, the matter is remanded to the trial court for clarification. *See*, *e.g.*, *Manos v. Manos*, 9th Dist. Summit No. 24717, 2010-Ohio-1178, ¶ 43. Mother's second assignment of error is sustained.

## ASSIGNMENT OR ERROR III

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WITH ITS CHILD SUPPORT/HEALTH INSURANCE ORDER.

{¶27} Finally, Mother argues that the trial court did not follow the procedure set forth in R.C. 3119.32 when it calculated child support. To begin with, the trial court did not order Mother to pay child support for any of the children. Regarding the children's medical expenses, the trial court ordered that the parents of each child be jointly and severally responsible for the child's medical expenses and that they provide the legal custodian with medical insurance cards and/or forms, if they have insurance coverage available for the children. Mother does not argue that the trial court's judgment would have been different under the terms of R.C. 3119.32, nor that she was aggrieved by this aspect of the order.

{¶28} "'An appeal lies only on behalf of the party who is aggrieved by the judgment.' The sole purpose of an appeal is to provide the appellant an opportunity to seek relief in the form of a correction of errors of the lower court that injuriously affected [her]." (Internal citations omitted.) *BFG Fed. Credit Union v. CU Lease, Inc.,* 9th Dist. Summit No. 22590, 2006-Ohio-1034, ¶ 36. "The burden is on the appellant to establish that [she] is an aggrieved party whose rights have been adversely affected by the trial court's judgment." *State v. Senz,* 9th Dist. Wayne No. 02CA0016, 2002-Ohio-6464, ¶ 5. Because Mother has not demonstrated that she suffered prejudice through the trial court's order pertaining to child support and medical expenses, her third assignment of error is overruled. *See also In re R.S.*, 9th Dist. Summit Nos. 27857, 28073, 2017-Ohio-2835, ¶ 20.

## III.

{¶29} Mother's first and third assignments of error are overruled. Her second assignment of error is sustained insofar as clarification is required by the trial court about Mother's parenting time with A.E. The judgment of the Lorain County Court of Common Pleas, Juvenile Division, is affirmed in part and reversed in part.

Judgment affirmed in part,
reversed in part, and
remanded for clarification.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

DONNA J. CARR
FOR THE COURT

TEODOSIO, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

DENISE E. FERGUSON, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and EMILY W. KIRSCH, Assistant Prosecuting Attorney, for Appellee.

JEANETTE ROBINSON, Guardian ad Litem.